# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 5:17-cv-02135-AB-KES                                              Date: November 6, 2017

Title: ANTHONY VARGAS v. JOHN C. PRINCE, ET AL.

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     Screening Order re Complaint (Dkt. 1)

On October 14, 2017, Plaintiff Anthony Vargas ("Plaintiff") constructively filed a pro se verified civil rights complaint pursuant to 42 U.S.C. § 1983 (the "Complaint"). (Dkt. 1.) Plaintiff is in custody at the California Institution for Men in Chino, California. (Id. at 2.) He seeks leave to proceed in forma pauperis ("IFP") in this action. (Dkt. 2.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), the Court is required to screen the Complaint to determine whether the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2), 1915A(b).

## I.   FACTUAL ALLEGATIONS.

The Complaint asserts claims against defendants John C. Prince, M.D., Noel T. Hul, M.D., and an unnamed "John Doe" ("Defendants"), each in their individual and official capacities. (Dkt. 1 at 4.) Plaintiff alleges that Drs. Prince and Hul are urologists at the Riverside County Regional Medical Center (the "Center"). (Id. at 5, 8.) Plaintiff asserts that "John Doe" is Chief of Urology at the Center. (Id. at 11.) He claims that the Center "maintains contractual arrangements" with the California Institution for Men, and that each of Defendants "was employed by, or under contract with, the State of California" at all relevant times. (Id. at 4, 5.)[1]

---

[1] Elsewhere in the Complaint, Plaintiff also alleges that Defendants are "employed by" the Center, which appears from its title to be a municipal operation. (Id. at 5, 8.)

According to the Complaint, Plaintiff was diagnosed with prostate cancer in 2010. (Dkt. 1 at 6.) He elected radiation treatment, which he received from February to March 2012. (Id.) Plaintiff alleges that Drs. Prince and Hul told him that injections of the drug Lupron would be "added to the radiation treatments" and would be given once every six months for two years. (Id. at 6, 9.) Plaintiff was told that Lupron would "lower his testosterone levels" to facilitate treatment. (Id. at 6, 9.) Plaintiff asserts that Drs. Prince and Hul "[a]t no time" informed him of the "adverse side effects of Lupron," despite that fact that they are "well-known and well-documented." (Id. at 5, 6, 9.)

Plaintiff alleges that in July 2016, he noticed that he had developed "female breasts," and in August 2016, was diagnosed with gynecomastia, i.e., enlarged male breasts. (Dkt. 1 at 7.) Plaintiff alleges that he continues to suffer from this condition, and will "ad infinitum." (Id.) He asserts that this outcome was a "direct result" of the Lupron injections, and that, had he been warned that of the risk of developing enlarged breasts, "his choice of medical treatment for prostate cancer would have been much different." (Id.) "If nothing else," Plaintiff claims, he "would have adamantly refused the Lupron injections." (Id.) The Complaint further alleges that John Doe, as Chief of Urology, failed to "ensure adequate training and supervision of urologists" at the Center. (Id. at 11.)

Based on these allegations, Plaintiff contends that Defendants' actions constitute deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment. (Dkt. 1 at 7, 10, 12.) As to Drs. Prince and Hul, he also alleges "medical malpractice." (Id. at 7, 10.) Plaintiff seeks relief including (1) declaratory judgment; (2) compensatory damages of $250,000 against each Defendant; and (3) punitive damage of $1,750,000 against each Defendant. (Id. at 13.)

## II.     LEGAL STANDARD.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). A pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). At the pleadings stage, "[t]he court 'accept[s] the plaintiffs' allegations as true and construe[s] them in the light most favorable to plaintiffs.'" Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008) (citing Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002)). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless it is "absolutely clear" that the complaint's deficiencies could not be cured by amendment. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).

/ / /

/ / /

## III.     DISCUSSION.

### A.     "Under Color of State Law."

"To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). In West, the United States Supreme Court addressed whether a private physician under contract with a state to provide medical service to prison inmates acted under "color of state law" within the meaning of 42 U.S.C. § 1983. Id. at 43. It concluded that where the state "employs physicians … and defers to their professional judgment" in order to fulfill its obligation to provide medical care to its prison inmates, those physicians are "clothed with the authority of state law" and "may fairly be said to be a state actor." Id. at 55; see also Alexander v. Bay, 06-cv-8257-JVS (JEM), 2010 U.S. Dist. LEXIS 74636, at *38 (C.D. Cal. June 14, 2010) (citing West, 487 U.S. at 55) ("[I]t is only those physicians authorized by the State to whom the inmate may turn.").

Here, Plaintiff claims that Defendants work at the Center. (Dkt. 1 at 4.) He further alleges that the Center maintains "contractual arrangements" with the California Institution for Men, and that each of the Defendants was "employed by" or "under contract with" California. (Id. at 4, 5.) Without determining the truth of these allegations, the Complaint asserts sufficient state action to satisfy the Court's preliminary screening function.

### B.     "Deliberate Indifference."

Deliberate indifference in violation of the Eighth Amendment exists when a prison official knows an inmate faces a substantial risk of serious harm to his health and fails to take reasonable measures to abate the risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain;'" and (2) "the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id.

In this case, Plaintiff alleges that he suffers a serious medical condition, i.e., prostate cancer. (Dkt. 1 at 6.) He does not assert, however, that Defendants denied him treatment for this condition or unduly delayed treatment. Instead, his claim is grounded on the allegation that Defendants improperly prescribed a remedy (Lupron injections) without informing him of

potentially adverse consequences of that treatment, namely, the potential for gynecomastia. According to Plaintiff, Defendants' failure to advise him of these consequences deprived him of the opportunity to give informed consent to the treatment.

Plaintiff contends that, if he had been fully informed of the potential side effects of Lupron, he would not have given consent and "his choice of medical treatment for prostate cancer would have been much different." (Dkt. 1 at 7.) The fact that Plaintiff may disagree with the chosen course of medical treatment, however, is, without more, insufficient to support an Eighth Amendment claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). "[W]here a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." Id. (citing Estelle v. Gamble, 429 U.S. 97, 107-08 (1976)). To prevail under these principles, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and … that they chose this course in conscious disregard of an excessive risk to plaintiff's health …." Id. (citations omitted).

The Complaint does not plausibly allege that the chosen course of medical treatment—prescribing Lupron injections—was "medically unacceptable" or chosen "in conscious disregard of an excessive risk" to Plaintiff's health. Plaintiff does not assert, for example, that Defendants ignored necessary medical care or took advantage of a medical condition to inflict pain on him by recommending a medically ineffective treatment with debilitating side effects. Further, Plaintiff's allegations that Defendants committed "medical malpractice" do not suffice to give rise to a constitutional violation. Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Based on the Complaint's allegations, Plaintiff was timely diagnosed and treated for cancer. The Complaint does not state a claim for an Eighth Amendment violation.

Nonetheless, the Ninth Circuit has recognized "a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment, and to receive sufficient information to exercise these rights intelligently." Benson v. Terhune, 304 F.3d 874, 884 (9th Cir. 2002) (citations omitted). In doing so, it cited with approval the Third Circuit's holding in White v. Napoleon, 897 F.2d 103, 111 (3d Cir. 1990) that "prisoners have a constitutional right to information—about the diagnosis, proposed treatment, its benefits and side effects and viable alternative treatments available in the prison setting—as is reasonably necessary to make a rational decision to accept or reject proposed medical treatment." Id. These entitlements are grounded, however, in the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. Id. (citing Due Process Clause); Pabon v. Wright, 459 F.3d 241, 253 (2d Cir. 2006) (the Eighth Amendment "governs the way in which medical treatment is administered to prisoners," while the Fourteenth "protects the individual's liberty interest in making the decisions that affect his health and bodily integrity"); Sama v. Hannigan, 669 F.3d 585, 591 (5th Cir. 2012) (distinguishing Eighth and Fourteenth Amendment claims based on lack of consent). Here, Plaintiff's claims are alleged under the Eighth Amendment. (Dkt. 1 at 5 ("This is a civil rights action … to redress the deprivation … of rights, privileges, and immunities guaranteed to [P]laintiff by the Eight

Amendment….")  Under Ninth Circuit law, this is the incorrect constitutional provision. Accordingly, Plaintiff's claims are dismissed with leave to amend.[2]

## C. Official Capacity Claims.

Plaintiff alleges claims against each Defendant in an official capacity. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166 (emphasis in original).

In this case, Plaintiff alleges in some portions of his Complaint that Defendants are employed by, or under contract with, the State of California. (Dkt. 1 at 4.) If Plaintiff intends to assert claims against Defendants in their official capacities as agents of the state, then the Eleventh Amendment will apply. "Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988). While an exception to this rule exists under some circumstances for "actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law," Coal. to Defend Affirmative Action v. Brown, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing Ex parte Young, 209 U.S. 123, 155-56 (1908)), Plaintiff's claims for compensatory and punitive damages do not fall under that exception. Walker v. Villalobos, 12-cv-2383-VAP-PJW, 2013 U.S. Dist. LEXIS 185294, at *10 (C.D. Cal. Dec. 9, 2013) ("Given that Defendants are officials at a California state prison, a judgment against them in their official capacities would be tantamount to a judgment against the State of California, which is immune from suit in federal court for money damages under the Eleventh Amendment."). As a result, Plaintiff's damage claims against Defendants in their official capacities are improper as alleged.

Alternatively, Plaintiff asserts in other portions of his Complaint that Defendants are employees of the Center, which appears from its title to be a municipal entity. (Dkt. 1 at 5, 8.) If Plaintiff sues Defendants in their official capacities as employees of a municipality, then his

---

[2] At least one recent out-of-district opinion has allowed a similar claim to proceed under the Eighth Amendment. Williams v. Kelly, 15-cv-8135, 2017 U.S. Dist. LEXIS 1322, at *7 (N.D. Ill. Jan. 5, 2017) ("Plaintiff has plausibly alleged his deliberate indifference claim because he alleges that the risk of the serious health condition gynecomastia was substantial enough that … medical professionals … should have advised him of this side effect so that he could have made an informed decision."). The unpublished Seventh Circuit case relied on in that opinion, however, Phillips v. Wexford Health Sources, Inc., 522 Fed. Appx. 364, 367 (7th Cir. Apr. 15, 2013), has been questioned for analyzing an informed-consent claim under the Eighth Amendment. See Knight v. Grossman, 16-cv-1644, 2017 U.S. Dist. LEXIS 6198, at *14 n.2 (E.D. Wis. Jan. 17, 2017). Given the Ninth Circuit's analysis Benson, the Court concludes Plaintiff's claim is not properly pursued under the Eighth Amendment.

allegations are insufficient, as he has not plausibly alleged a municipal "policy or custom" pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).

In filing an amended Complaint, Plaintiff may wish to clarify whether he intends to bring official capacity claims against Defendants as state actors or municipal actors. He may also voluntarily withdraw his official capacity claims.

## IV.     CONCLUSION.

Based on the foregoing, it is ordered that Plaintiff's Complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE and with leave to amend. Plaintiff has until November 30, 2017 to file a First Amended Complaint that corrects, if Plaintiff can, the deficiencies identified in this Order.

Plaintiff also attaches to the Complaint a "Motion for Appointment of Counsel." (Dkt. 1 at 14-15.) He indicates that he has contacted several legal services in an effort to secure representation. (<u>Id.</u> at 15.) Under 28 U.S.C. § 1915(e), the Court "may request an attorney to represent any person unable to afford counsel." "[I]t is well established that there is generally no constitutional right to counsel in civil cases." <u>United States v. Sardone</u>, 94 F.3d 1233, 1236 (9th Cir. 1996). "The decision to appoint such counsel [under § 1915(e)] is within the sound discretion of the trial court and is granted only in exceptional circumstances." <u>Agyeman v. Corr. Corp. of Am.</u>, 390 F.3d 1101, 1103 (9th Cir. 2004) (citation omitted). After an evaluation of the likelihood of success on the merits and Plaintiff's ability to articulate his claims <u>pro se</u>, the Court finds that the exceptional circumstances which are necessary to grant Plaintiff's request for counsel do not appear to exist at this time. Accordingly, Plaintiff's motion for counsel is DENIED without prejudice. Plaintiff's family or friends outside of custody may wish to contact a local bar association referral service to inquire about whether an attorney would be willing to represent Plaintiff on a contingency fee basis. The contact information of several local services is as follows:

- Orange County Bar Association Lawyer Referral and Information Service: (949) 440-6747.

- Los Angeles County Bar Association Lawyer Referral Service: (213) 243-1525.

- Riverside County Bar Association Lawyer Referral Service, West Riverside: (951) 682-7520; East Riverside: (760) 568-5555.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk <u>JD</u>